UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------X   Case No.  23-40070-NHL

IN RE:

    **HYACINTH JOYCE SIMMS**                              Sub-V

                 Debtor,

-----------------------------------------------------------X

**Plan of Reorganization for Small Business Under Chapter 11**

<u>**HYACINTH J. SIMMS' PLAN OF REGOANIZATION, DATED DECEMBER 12, 2023**</u>

Hyacinth Simms, the debtor (Debtor) through her undersigned counsel respectfully apprises the court of the followings:

**Background**

    The Debtor is an individual running a tax and accounting business from her now house, 1478 Flatbush Avenue Brooklyn, NY 11210 (Flatbush Property). The Debtor purchased Flatbush Property in 1992. It is a mixed use property.  It has one store fronts and two family houses above. The Debtor occupies one of house. And the other one is rented to Ina Dillon. And she is operating her tax preparation business from the store front.

    Initially, after the purchase, the Debtor had rented the entire Flatbush Property. A few years back, the Debtor gave her sister Dulci Reid a sum of $85,000 as she was running short of funds to renovate her property located at 36-38 St. Felix Street, Brooklyn, NY 11217 (Felix Property). Felix Property was owned by Norlin Corporation.  The construction of the Felix Property was not completed in time, despite the presence of the funds. The responsible construction company did not finish the work in time as per the agreement with the Community Bank. The Debtor around May 2005, acquired majority share of the Norlin Corporation from her sister.  Since the work was not complete, the Community Bank commenced foreclosure proceedings.  The Bank's payoff was

$566,944.03 on September 16, 2005. The Debtor approached Bayview Lending Services LLC for a loan. The Debtor mortgaged her Flatbush Property for $289,500. But her sister could not get the other half necessary. So, in panic, she approached hard money lender Ross Rock. She called their office in Manhattan and went to meet see them. She met a middle-aged man and she told him about her problem. They told her that they will give her a loan, she provided them all her information. Soon thereafter in a couple of days, the Debtor received a phone call from Ross Rock and the person said, "I have a good news for you." And that they have purchased the loan from Community and now she owe them 1.6 million. Caught between a rock and hard place, the Debtor was forced and she agreed to have her Flatbush Property as an additional collateral for a loan repayment and agreement with Ross Rock. On top of adding Flatbush Property, Ross Rock insisted that as a condition for loan, she will have to use Ross Rock provided architect for St. Felix Property. The additional monies that Ross Rock alleged to have given to the Debtor's corporation was never provided to her, rather Ross Rock controlled the disbursement of the Funds. Ross Rocks' team did not complete the work. Rather, the Debtor had to spend an additional sum of $250,000 from her pocket to get the construction moving on St. Felix Property. As a result of this control and deliberate omissions, Ross Rock had the loan in default and moved for foreclosure on both properties, Flatbush Property and Felix Property. There was a default judgment against the Debtor. Felix Property was auctioned in 2016, it went back to Ross Rock.

Thereafter there were series of bankruptcy filings by the Debtor. On November 4, 2023, the Court granted in rem relief against the lender on Flatbush Property. The Debtor has another property a house that she purchased in 2008 located at 624 Powells Lane, Westbury, New York **(Westbury Home)**. This was her primary residence. Westbury Home was destroyed due to an electrical fire. Debtor had an insurance with the lender, Chase bank. The Debtor had move out

and trusting that Chase bank would be able to have the work supervised and done expeditiously, the Debtor rented a place. However, the Westbury Home was never completed. The Debtor has commenced an adversary proceeding Adv. No. 23-01070, for specific performance and as well as an objection to the claim filed by Chase bank.

The Debtor has s a time share at Time Share Polo Towers, 3746 Las Vegas Blvd South, Las Vegas NY 89109 (**Time Share**). The Debtor has yet to find out the value of the time share.

Debtor is conducting a tax preparation business under Simms Tax Services name. Simms Tax Services is not a registered entity. She earns around $150,000 a year.

### B. Liquidation Analysis

The Debtor Flatbush Property is about $2.4m. However, it has a lien of Felix Street Holding, LLC. Felix Street Holding has filed proof of claim of $1,796,352.81. Debtor claims that the said claim filed is false , as the creditor has agreed to a payment of $1,140,711.48. The Debtor claims an homestead exemption in Flatbush Property. The Westbury Home has an approximate value of $860,000. It's encumbered by a mortgage lien and the pay off figure is $522,055.93 as is evidenced by filed proof of Claim by Chase. The amount claimed by Chase is disputed by the Debtor. Time Share value is still being ascertained. The Debtor has other furniture and appliances as used in a home and office, whose value is not more than $5000.

### C. Ability to make future plan payments and operate without further reorganization.

The Debtor has the financial wherewithal to proposed and maintain a payment plan over the life of the Plan. She will have the projected disposable income to sustain the Chapter 11 plan payments for the period described in 11 U.S.C. § 1191 (c)(2). The Final payment is expected to be paid on December 15, 2027.

**Article 1: Summary**

This Plan of Reorganization (the Plan) under chapter 11 of the Bankruptcy Code (the Code) proposes to pay creditors of the Debtor) from refinancing of the Flatbush Property and Westbury Home as well as from cash flow from operation of Simms Tax Services.

This Plan provides for:

i. Classes of priority claims;
ii. Classes of secured claims;
iii. Classes of non-priority unsecured claims; and
iv. Classes of equity, that is the Debtor herself.

Non-priority unsecured creditors holding allowed claims will receive distributions, which the proponent of this Plan has valued at approximately 100 cents on the dollar. Debtor claims that she has no unsecured creditors. This Plan also provides for the payment of administrative and priority claims.

All creditors and equity security holders should refer to Articles 3 through 6 of this Plan for information regarding the precise treatment of their claim.

Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)

**Article 2: Classification of Claims and Interests**

**Class 1:** All allowed claims entitled to priority under § 507(a) of the Code (except administrative expense claims under § 507(a)(2) and priority tax claims under § 507(a)(8)).

**Class 2:** The claim of Felix Street Holding, LLC, to the extent allowed as a secured claim under § 506 of the Code and after the resolution of the challenge to the proof of claim filed by Flexi Street Holding, LLC.

**Class 3:** The claim of JPMorgan Chase Bank, National Association to the extent allowed as a secured claim under § 506 of the Code and after the resolution of the challenge to the proof of claim filed by JP Morgan Chase Bank.

**Class 4:** All non-priority unsecured claims allowed under § 502 of the Code.

**Class 5:** The interest of the individual Debtor in property of the estate.

**Article 3: Treatment of Administrative Expense Claims, Priority Tax Claims, and Quarterly and Court Fees**

3.01 Unclassified claims Under section § 1123(a)(1), administrative expense claims, and priority tax claims are not in classes.

3.02 Administrative expense claims Each holder of an administrative expense claim allowed under § 503 of the Code, will be paid in full on the effective date of this Plan, in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor.

3.03 Priority tax claims: Each holder of a priority tax claim will be paid.

3.04 Statutory fees: All fees required to be paid under 28 U.S.C. § 1930 that are owed on or before the effective date of this Plan have been paid or will be paid on the effective date.

3.05 Prospective quarterly fees All quarterly fees required to be paid under 28 U.S.C. § 1930(a)(6) or (a)(7) will accrue and be timely paid until the case is closed, dismissed, or converted to another chapter of the Code.

**Article 4: Treatment of Claims and Interests Under the Plan**

4.01 Claims and interests shall be treated as follows under this Plan:

| Class | Impaired/unimpaired | Treatment |
|---|---|---|
| **Class 1- Priority Claim:** | *Unimpaired* | Paid on the Effective date of the Plan |
| **Class 2-Secured Claim: Felix Street Holding LLC** | *Impaired* | Creditor shall be paid upon resolution of the claims by the Debtor against Felix Street. |
| **Class 3—Secured Claim: JP Morgan Chase Bank** | *Impaired* | Creditor shall be paid upon resolution of the claims by the Debtor against Chase |
| **Class 3 Nonpriority Unsecured Creditors** | *Unimpaired* | To be paid over a period of 3 years. |
| **Class 4 Interest of Individual Debtor** | *Impaired* | Debtor to revested with entire properties subject to the liens unaddressed in the court of the secured creditor. The Debtor shall remain in possession of the Flatbush Property and the Westbury Home and Felix Holding and Chase shall cease any claims or any action to take possession of the same upon having satisfied the plan provisions. |

**Article 5: Allowance and Disallowance of Claims**

5.01 Disputed claim   A disputed claim is a claim that has not been allowed or disallowed [by a final nonappealable order], and as to which either:

 (i) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or

 (ii) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated.

5.02 Delay of distribution

| on a disputed claim: | No distribution will be made on account of a disputed claim unless such claim is allowed [by a final non-appealable order]. |
|---|---|
| 5.03 Settlement of disputed claims | The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure. |

**Article 6: Provisions for Executory Contracts and Unexpired Leases**

| 6.01 Assumed executory contracts and unexpired leases: | (a) The Debtor assumes, and if applicable assigns, the following executory contracts and unexpired leases as of the effective date: None.<br><br>(b) Except for executory contracts and unexpired leases that have been assumed, and if applicable assigned, before the effective date or under section 6.01(a) of this Plan, or that are the subject of a pending motion to assume, and if applicable assign, the Debtor will be conclusively deemed to have rejected all executory contracts and unexpired leases as of the effective date.<br><br>A proof of a claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than 30 days after the date of the order confirming this Plan. |
|---|---|

**Article 7: Means for Implementation of the Plan**

The plan shall be funded by refinancing the Flatbush Property and as well as Westbury Home. Also the payments to the creditors related to the said properties would be made only after the resolution of the claims of the Debtors against such creditors. Also the Debtor has a sound tax preparation business, which shall provide funding for regular payments for the unpaid creditors.

**Article 7: Means for Implementation of the Plan**

| | |
|---|---|
| 8.01 Definitions and rules of construction: | The definitions and rules of construction set forth in §§ 101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan, and they are supplemented by the following definitions: [Insert additional definitions if necessary]. |
| 8.02 Effective date: | The effective date of this Plan is the first business day following the date that is 14 days after the entry of the confirmation order. If, however, a stay of the confirmation order is in effect on that date, the effective date will be the first business day after the date on which the stay expires or is otherwise terminated. |
| 8.03 Severability: | If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan. |
| 8.04 Binding effect: | The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity. |
| 8.05 Captions: | The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan. |
| 8.06 Controlling effect: | Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of New York govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan. |
| 8.08 Retention of Jurisdiction: | The Bankruptcy Court shall retain jurisdiction on the all aspects of the Plan including its implementation and as well as for proceeding to enforce its provisions. |

**Article 9: Discharge**

If the Debtor's Plan is confirmed under § 1191(a), on the effective date of the Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, to the extent specified in § 1141(d)(1)(A) of the Code. The Debtor will not be discharged from any debt:

(i)     imposed by this Plan; or

(ii)    excepted from discharge under § 523(a) of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

**Also, please note** that if the Debtor's Plan is confirmed under § 1191(b), confirmation of the Plan does not discharge any debt provided for in this Plan until the court grants a discharge on completion of all payments due within the first 3 years of this Plan, or as otherwise provided in § 1192 of the Code. The Debtor will not be discharged from any debt:

(i)     on which the last payment is due after the first 3 years of the plan, or as otherwise provided in § 1192; or

(ii)    excepted from discharge under § 523(a) of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

Respectfully submitted,

/s/ Hyacinth J. Simms_
**Ms. Hyacinth J. Simms, the Debtor**


*/s/karamvirdahiya*

**Karamvir Dahiya, the Counsel for the Debtor**