**DUFFYAMEDEO LLP**
132 West 31st Street, 9th Floor
New York, NY 10010
Todd E. Duffy
Tel: (212) 729-5832
tduffy@duffyamedeo.com

*Counsel to Debtor*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------x
:     Case No. 23-40070 (NHL)
In re                                                     :
:
HYACINTH JOYCE SIMMS                 :     Chapter 11
:
                         Debtor.                    :
-------------------------------------------------------------x

## SUBCHAPTER V
## AMENDED PLAN OF REORGANIZATION

### Background

**A.     Description and History of Debtor**

Hyacinth Joyce Simms ("**Debtor**") is an individual who commenced this case under Chapter 13 of Title 11 of the United States Code ("**Bankruptcy Code**") in the United States Bankruptcy Court for the Southern District of New York ("**Court**") by the filing of a voluntary petition on January 11, 2023 ("**Filing Date**"). On August 22, 2023, the Debtor commenced the Adversary Proceeding. On August 23, 2023, the Debtor's case was converted to a case under subchapter V of chapter 11 of the Bankruptcy Code. As of the date hereof, no official committee of unsecured creditors has been appointed. On the September 19, 2023, Ronald J. Friedman, Esq., was appointed Subchapter V Trustee.

Prior to the Petition Date, the Debtor owned three properties. One of those properties was foreclosed upon prepetition. On August 7, 2023, Felix Street Holdings LLC ("Felix Street") moved for relief from the automatic stay to foreclose upon the second property located at 1478 Flatbush Avenue, Brooklyn, NY. The Debtor purchased this property in 1991, has operated her tax preparation business at this address since 1992, and has lived at this address since in or about 2010. On November 4, 2023, this Court granted the Felix Street lift stay motion and Felix Street was the successful bidder at an auction of the 1478 Flatbush Avenue property. Notwithstanding that auction, the Debtor has remained in the property and paid monthly for use and occupancy.

The Debtor owns one remaining property located at 624 Powels Lane, Westbury, New York (the "Westbury Home"). Currently, the Westbury Home is encumbered by a secured lien held by Chase Bank. Previously, the Westbury Home was severely damaged by fire on August

22, 2008. The Debtor makes her living by operating a tax preparation business under the name of Simms Tax Services. She earns approximately $150,000 per year.

On the Petition Date, the Debtor was represented by Karamvir Dahiya. On July 15, 2024, Mr. Dahiya informed the Court that he had been suspended from the practice of law for three months. On October 22, 2024, the Court entered an Order approving the retention of DuffyAmedeo LLP as of September 10, 2024. Concurrently, with the filing of the Plan, the Debtor filed a motion to resolve the Adversary Proceeding.

The plan ("**Plan**"), which will provide for cash payments to creditors over time, will be funded by Debtor's tax preparation business.

**B.** **The Adversary Proceeding**

On or about August 22, 2023, the Debtor commenced an adversary proceeding entitled Simms v. J.P. Morgan Chase Bank N.A. et al. Adversary Proceeding No. 23-01070 (NHL) (the "Adversary Proceeding"). The Adversary Proceeding alleges that JP Morgan Chase Bank NA ("Chase Bank") and the other defendants breached an agreement when they oversaw the renovations of the house, and the resulting repairs were not up to the applicable building code. In the Adversary Proceeding, the Debtor requested damages related to the repairs and various expenses that resulted therefrom. Because the repairs were not up to Code, the Debtor stopped paying on the mortgage and Chase Bank sought to foreclose. In the Adversary Proceeding, the Debtor demanded that Chase Bank properly fix the Westbury Home and compensate her for damages.

During her bankruptcy case, the Debtor had settlement discussions with all of the Defendants in the Adversary Proceeding. Those settlement discussions have resulted in a complete resolution of the Adversary Proceeding. In exchange for resolving this case, Chase Bank has agreed to forgive the remaining amounts owed under the mortgage on the Westbury Home. This will enable the Debtor to raise the money to repair the Westbury Home so it complies with the local building code and she will not need to pay a mortgage at all. The remaining conditions of the settlement agreement are detailed in the motion to approve that deal. The Debtor intends to move to the Westbury Home once repairs are completed.

**Liquidation Analysis**

To confirm the Plan, the Court must find that all creditors[1] who do not accept the Plan will receive at least as much under the Plan as such claim holders would receive in a chapter 7 liquidation. Debtor's non-exempt assets include the income derived from her tax revenue business, which are estimated to generate gross revenues to Debtor of approximately $454,650 during the life of the proposed plan. A hypothetical liquidation analysis of Debtor's assets in a chapter 7 is attached to the Plan as **Exhibit A**. The liquidation analysis reflects a distribution to general unsecured creditors of 0%.[2]

---

[1] As this is an individual bankruptcy case, there are no equity security holders involved in this case, though Debtor will retain her ownership interests in her assets.

[2] Although the Debtor will own the Westbury Home free and clear of all liens and reasonable minds could disagree about the value of the Westbury Home. In light of the extensive damage to the Westbury Home and the estimates

2

## C. Ability To Make Future Plan Payments and Operate Without Further Reorganization

The Plan Proponent must also show that it will have sufficient cash over the life of the Plan to make the required Plan payments. For purposes of demonstrating this requirement, Debtor has provided projected financial information as **Exhibit B** which reflects that Debtor will have projected disposable income (as defined by Bankruptcy Code section 1191(d)) for the period described in Bankruptcy Code section 1191(c)(2) to make the required distributions to creditors.

Based on the anticipated income from the operations of her tax preparation business, Debtor's financial projections show that she will have an aggregate $135,352.00 of disposable income during the life of her plan and that she can make varying **monthly distributions** over the course of her thirty-six month plan which will aggregate as follows:

- Administrative Creditors: $30,000.00
- Priority Tax Claims: $83,352.00
- Unsecured Creditors: <u>$33,000.00</u>

Total Amount Paid: $135,352.00

Based on the foregoing, Debtor submits that the proposed percentage of payment to holders of Allowed Class 3 Claims will total approximately 1.1%, which is more than what those same creditors would receive in a projected liquidation under chapter 7 (as discussed above).

The financial projections are based on anticipated proceeds from the operations of the Debtor's tax preparation business.

You should consult with your accountant or other financial advisor if you have any questions pertaining to these projections.

## Article 1: Summary

This Plan of Reorganization ("**Plan**") under subchapter V of Title 11 of the United States Code ("**Bankruptcy Code**") proposes to pay creditors of HYACINTH JOYCE SIMMS from proceeds from her tax preparation business.

This Plan provides for the classification of claims as follows:

> 1 Class of Priority Tax Claims; and
> 1 Class of non-priority Unsecured Claims

The deadline for non-governmental units holding claims against Debtor to file proofs of claim is December 22, 2023. Between those creditors that filed a proof of claim to date or did not

---

for repairs to make it livable, the Debtor submits that she has no equity in the Westbury Home. During this case, the Debtor stated that the Westbury Home was her homestead. While reasonable parties can disagree about the value of the property, the Debtor submits that given the remaining damage to the home and projected costs to repair it, it would not be valued over the current NY homestead exemption of $150,000. See NY CPLR § 5106.

file a proof of claim but were included in Debtor's schedules as holding an undisputed, non-contingent, liquidated claim, Debtor projects that the holders of allowed non-priority general unsecured claims will total approximately $2,079,349.

The Plan provides for payment of administrative, priority and unsecured claims in accordance with the Bankruptcy Code. General unsecured creditors holding Allowed Claims will receive distributions in accordance with Debtor's projected disposable income as set forth in Exhibit B, which Debtor has been valued at approximately $140,352, over a period of three (3) years. Actual distributions to general unsecured creditors will depend on the total final Allowed General Unsecured Claims.

## Article 2: Classification of Claims and Interest

**2.01 Class 1 Claims** <u>Priority Tax Claims</u> – All allowed priority tax claims allowed under the Bankruptcy Code.

**2.02 Class 2 Claims** <u>Non-Priority Unsecured Claims</u> – All non-priority unsecured claims allowed under Bankruptcy Code section 502.

## Article 3: Treatment of Administrative Expense Claims, Priority Tax Claims and Court Fees

### 3.01 Unclassified Claims

Under Bankruptcy Code section 1123(a)(1), administrative expense claims are not classified into in classes of creditors.

### 3.02 Administrative Expense Claims

Subject to section 328 of the Bankruptcy Code, each holder of an administrative expense claim allowed under Bankruptcy Code section 503 will be paid in full on the Effective Date unless the holder of that administrative expense claim agrees to different treatment. Included in those claims shall be a fee and reimbursement of expenses for the Subchapter V Trustee and professional compensation and reimbursement of expenses for Debtor's retained counsel and financial advisor in amounts to be determined by the Court after notice and a hearing.

The total fees and expenses for Debtor's retained professionals are currently projected to be approximately $25,000.00 through the Effective Date, assuming confirmation of this Plan subject to application to and approval by the Court. Of that amount, $8,000 will be paid from the proceeds of the settlement of the Adversary Proceeding. The remainder of $17,000 will be paid by funds provided by the Debtor's children.

The fees and expenses for the Subchapter V Trustee are currently projected to be approximately $7,000.00 through the Effective Date, assuming confirmation of this Plan, subject to application to and approval by the Court.

### 3.03 Priority Tax Claims

Each holder of a priority tax claim allowed under Bankruptcy Code section 507(a)(8) will be paid in accordance with Bankruptcy Code section 1129(a)(9)(c) with statutory interest; over the course of three (3) years beginning on the first day of the month following the Effective Date; or in accordance with Debtor's pre-petition payment plan. Priority Tax monthly payments of $3,473 will be paid in months 16 through 36, except in months 17, 18, 28 and 29 where double the monthly payment will be made in the amount of $6,946, and no payment is due in month 27. Upon completion of Plan payments, the Debtor will have paid a total of $1,833.30 to the New York State Department of Finance and $81,518.70 to the Internal Revenue Service. These payments will satisfy the claims of the N.Y. State Taxing Authority and the Internal Revenue Service in full.

3.04 General Unsecured Claims

Class 2.02 consists of the Allowed Claims of non-priority unsecured creditors. The Class 2.02 Claims are estimated to total $2,083,429. The holders of Allowed Class 2.02 Claims will receive aggregate payments of $33,000 as follows: the amount of $12,500 will be paid in each of the 29th and 32nd month, with the remaining $8,000 to be paid in the final month (month 36 of the Plan)payment in full the Debtors' Disposable Income over the life of the Plan. The holders of Class 2.02 Claims are impaired and may vote on the Plan. The amount of $12,500 will be paid in each of the 29th and 32nd month, with the remaining $8,000 to be paid in the final month (month 36 of the Plan).

**3.05 Statutory Fees**

All fees and charges required to be paid under 28 U.S.C. §1930, including any applicable interest, that are owed on or before the Effective Date of this Plan have been paid or will be paid on the Effective Date.

Debtor paid her case filing fee in full along with the filing of her petition and schedules. This case is a case under Subchapter V of Chapter 11 of the Bankruptcy Code, which does not impose any quarterly fee obligations on Debtor. Accordingly, Debtor believes that as of the Effective Date, she will have no fees owed or to be owed under 20 U.S.C. § 1930.

### Article 4: Treatment of Claims and Interests Under the Plan

**4.01 Claims and Interests Shall be Treated as Follows Under this Plan**:

| **Class** | **Impairment** | **Treatment** |
|---|---|---|
| Class 1 – Priority Tax Claims | Unimpaired | Class 1 consists of Allowed Priority Tax Claims under Section 507(a)(8) of the Bankruptcy Code. The Class 1 Claims are unimpaired and therefore the holders of the Class 2 Claims are not entitled to vote to accept or reject the Plan and are deemed to have accepted the Plan. |

| Class | Impairment | Treatment |
|---|---|---|
| Class 2 – Non-Priority Unsecured Claims - All non-priority unsecured claims allowed under Bankruptcy Code section 502 | Impaired | Class 3 consists of Allowed General Unsecured Claims against Debtor's Estate. Upon the Effective Date of the Plan, in full satisfaction of its Allowed General Unsecured Claim, each holder of an Allowed General Unsecured Claim will receive a *pro rata* distribution of Debtor's projected monthly income over 36 months following the Effective Date of the Plan.<br><br>Class 3 Claims are Impaired, and therefore holders of Class 3 Claims are entitled to vote to accept or reject the Plan and are not deemed to have accepted the Plan. |

## Article 5: Allowance and Disallowance of Claims

**5.01 Disputed Claims**

A disputed claim is a claim that has not been allowed or disallowed by a final non-appealable order, and as to which either:

(i) a proof of claim has been filed or deemed filed, and Debtor or another party in interest has filed an objection; or

(ii) no proof of claim has been filed, and Debtor have scheduled such claim as disputed, contingent, or unliquidated.

**5.02 Delay of Distribution on a Disputed Claim**

No distribution will be made on account of a disputed claim unless such claim is Allowed by a final non-appealable order of the Court.

**5.03 Settlement of Disputed Claims**

Debtor will have the power and authority to settle and compromise any disputed claim with Court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

## Article 6: Allowance and Disallowance of Claims

**6.01 Assumption of Executory Contracts and Unexpired Leases**

(b) Except for executory contracts and unexpired leases that have been assumed, and if applicable, assigned, before the Effective Date or under section 6.01(a) of this Plan, or that are

the subject of a pending motion to assume, and if applicable, assign, Debtor will conclusively be deemed to have rejected all executory contracts and unexpired leases as of the Effective Date.

(c) A proof of claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than thirty (30) days after the date of the entry of the order confirming this Plan.

**6.02 Cure Payments**

To the extent an executory contract or unexpired property or personal property lease was in a monetary default or otherwise had an amount due under such contract or lease as of the Filing Date, such monetary amount(s) owed shall be paid on the Effective Date of the Plan, or in accordance with any other agreement as between Debtor and the contract or lease counterparty.

Debtor believes that on the Filing Date he was current on all executory contracts or unexpired property or personal property leases which he will be assuming under this Plan.

## Article 7: Means for Implementation of the Plan

**7.01 Funding of Plan**

The distributions that are to be made on and after the Effective Date under this Plan shall be funded from Debtor's disposable income from ongoing operations of her tax preparation business along with a contribution from the settlement of the Adversary Proceeding associated with the Debtor's case. In the event the Court approves this Plan either as a consensual Plan under section 1191(a), or by a non-consensual confirmation under section 1191(b), Debtor shall be the Disbursing Agent responsible for making all post-Confirmation payments that are required under the Plan.

## Article 8: General Provisions

**8.01 Definitions and Rules of Construction**

The definitions and rules of construction set forth in sections 101 and 102 of the Bankruptcy Code shall apply when terms defined or construed in the Bankruptcy Code are used in this Plan, and they are supplemented by the following definitions:

"Allowed" or "Allowed Claim" means any Claim or Interest against Debtor that is scheduled by or on behalf of Debtor as not disputed, contingent or unliquidated, or proof or request for payment of which has been filed timely with the Court and, in either case, a Claim (a) as to which no objection has been interposed within one hundred twenty (120) days after the Effective Date or (b) as to which an objection has been interposed and such Claim has been allowed by a Final Order of the Court.

"Adversary Proceeding" means that certain adversary proceeding entitled *Simms v.J.P. Morgan Chase Bank N.A. et al.*, Adversary Proceeding No. 23-01070.

"Bankruptcy Code" means title 11 of the United States Code (11 U. S.C. §§ 1101, *et seq*.).

"Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure as in effect on the Filing Date and as amended after the Filing Date and during Debtor's chapter 11 case.

"Claim" means any "right to payment from Debtor whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or any right to an equitable remedy for future performance if such breach gives rise to a right of payment from Debtor whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, disputed, undisputed, secured or unsecured." 11 U.S.C. § 101(5).

"Confirmation Date" means the date on which the Court enters an order confirming this Plan.

"Confirmation Order" means the Order of the Court confirming this Plan.

"Court" means the United States Bankruptcy Court for the Southern District of New York.

"Disbursing Agent" means the person responsible for making distributions under this Plan as indicated in Section 9.03 of the Plan. Regardless of whether the Plan is confirmed under Bankruptcy Code section 1191(a) or Bankruptcy Code section 1191(b), Debtor will be the Disbursing Agent.

"Effective Date" shall have the same meaning as provided for in Section 9.02 of this Plan.

"Final Order" means an order of a Court as to which (a) any appeal that has been taken has been determined finally or dismissed or (b) the time for appeal has expired and (i) no timely appeal has been filed and (ii) no order having the effect of tolling or otherwise extending the appeal period is in effect.

"*Pro Rata* Distribution(s)" means, with respect to any Allowed Claim, the proportions that such Allowed Claim bears to the aggregate amount of all claims in such class.

"Reorganized Debtor" means Debtor on and after the Effective Date.

"Residence" means Debtor's primary residence located at 240 W Woodlawn Drive, Wading River, NY 11792.

"Vehicle" means Debtor's Tesla Model Y.

**8.02 Effective Date of the Plan**

The effective date ("Effective Date") of this Plan is the first business day following the date that is 14 days after the entry of the Confirmation Order.

**8.03 Severability**

If any provision in this Plan is determined to be unenforceable, such determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

**8.04 Binding Effect**

The rights and obligations of any entity named or referred to in this Plan will be binding upon and will inure to the benefit of the successors or assigns of such entity.

**8.05 Captions**

The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

**8.06 Controlling Effect**

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of New York govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

**8.08 Retention of Jurisdiction**

Following the Confirmation Date and until such time as all payments and distributions required to be made and all other obligations required to be performed under the Plan have been made and performed and the Final Decree has been entered closing the Chapter 11 Case, the Court shall retain jurisdiction over this proceeding under the provisions of the Bankruptcy Code, including, without limitation, § 1142(b) thereof and the Bankruptcy Rules, to ensure that the intent and the purpose of the Plan is carried out and given effect. Without limitation by reason of specification, the Court shall retain jurisdiction for the following purposes:

(a) To consider any modification of the Plan pursuant to § 1193 of the Bankruptcy Code and/or any other modification of the Plan after substantial consummation thereof;

(b) To hear and determine:

  (i) all controversies, suits and disputes, if any, as may arise in connection with the interpretation, implementation, consummation or enforcement of the Plan;

  (ii) all controversies, suits and disputes, if any, as may arise between or among the holders of any Class of Claim and Debtor including, without limitation, proceedings to determine the allowance, classification, amount, or priority of Claims;

  (iii) all rights or Causes of Action which may exist on behalf of the estates, including actions commenced to recover preferential transfers and other property of the estates;

  (iv) applications for allowance of compensation and expense reimbursement of Debtor's Professionals, and the Subchapter V Trustee, for periods prior to the Effective Date;

(v) any and all applications, adversary proceedings and litigated matters;

(vi) to enter a final decree closing the Chapter 11 Case; and

(vii) to the extent not expressly provided for above, any and all disputes arising under the Plan and proceedings in aid of the administration and/or consummation of the Plan.

**8.09 Remedy Upon Default in Making Plan Payments**

At any time during the Plan or until the Reorganized Debtor has fulfilled all payment obligations under the Plan, should the Reorganized Debtor find herself unable to afford the Plan's payments, the Reorganized Debtor shall file a request to modify the Plan, convert the case to a case under chapter 7 of the Bankruptcy Code or dismiss the case.

In the event any payment required pursuant to the Plan is more than ten (10) days overdue, the Debtor shall file a notice with the Court indicating the default ("**Default Notice**"). Debtor will be entitled to a 45-day grace period after the transmission or deemed issuance of the Default Notice ("**Grace Period**") to cure the default.

All parties in interest retain the right to request that the case be converted to a case under chapter 7 of the Bankruptcy Code or dismissed after the Default Notice is filed or deemed issued and such default is not cured. If Debtor has not cured the default within the Grace Period, creditors, or the Subchapter V Trustee are entitled to seek relief from the Bankruptcy Court to compel payment or convert or dismiss the case. This provision survives confirmation of the Plan, and creditors are entitled to enforce this provision post-confirmation. The Court retains jurisdiction to enforce this provision of the Plan.

**8.10 Vesting of Assets**

Pursuant to sections 1141(b) and (c), except as provided for in section 1141(d)(2) and d(3) and the Plan or the order confirming the Plan, as of the Effective Date, all property of Debtor's estate will vest in Reorganized Debtor free and clear of any and all liens, debts, obligations, claims, liabilities, and all other interests of every kind and nature, except for the Plan Obligations and as otherwise provided under the Plan.

### Article 9: Discharge; Subchapter V Trustee; Disbursing Agent

**9.01.1** If Debtor's Plan is confirmed under Bankruptcy Code section 1191(a), on the Effective Date of this Plan, Debtor will be discharged from any debt that arose before confirmation of this Plan, to the extent specified in Bankruptcy Code section 1141(d)(1)(A), except that Debtor will not be discharged of any debt:

(i) imposed by this Plan; or

(ii) excepted from discharge under Bankruptcy Code section 523, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure; and

    (iii)    unless, after notice and a hearing, the Court orders otherwise for cause, confirmation of the Plan does not discharge any debt provided for in the Plan until the Court grants a discharge on completion of all payments under the Plan.

### 9.01.2 Discharge of Debtor

If Debtor's Plan is confirmed under Bankruptcy Code section 1191(b) of the Bankruptcy Code, confirmation of this Plan does not discharge any debt provided for in this Plan until the Court grants a discharge on completion of all payments due within the first three (3) years of this Plan, or as otherwise provided under Bankruptcy Code section 1192. Debtor will not be discharged of any debt:

    (i)    on which the last payment is due after the first 3 years of the Plan, or as otherwise provided for in under Bankruptcy Code section 1192; or

    (ii)    excepted from discharge under Bankruptcy Code section 523, except as provided for in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

### 9.02 Role and Compensation of Subchapter V Trustee; Disbursing Agent

(a) Under Bankruptcy Code section 330, the Subchapter V Trustee shall be compensated for services and reimbursed for expenses. The Subchapter V Trustee will apply to the Court for an award of compensation through the application process that is used by professionals. The Subchapter V Trustee will file a final fee application for compensation to be heard with the other final fee applications in the case.

(b) If the Plan is confirmed on a consensual basis under Bankruptcy Code section 1191(a) or on a non-consensual under Bankruptcy Code section 1191(b), then the Subchapter V Trustee's services terminate and he is discharged from her trust upon substantial consummation of the Plan under Bankruptcy Code section 1183(c)(1), and the Subchapter V Trustee may collect approved compensation for all services. The Subchapter V Trustee's allowed compensation, as with any other administrative expenses, is payable on the Effective Date of the Plan, unless the Subchapter V Trustee agrees to different treatment.

### 9.03 Disbursing Agent

(a) If Debtor's Plan is confirmed on a consensual basis under Bankruptcy Code section 1191(a) or on a non-consensual basis under Bankruptcy Code section 1191(b), Debtor will be deemed to be the Disbursing Agent for all payments required to be made under this Plan, as confirmed.

## Article 10: Other Provisions

### 10.01 Deadline to File Fee Applications

All professionals, including the Subchapter V Trustee, shall file their fee application no later than one month after the Effective Date.

**10.02 Injunction**

Effective on the Confirmation Date, all creditors who have held, hold, or may hold Claims against Debtor or her assets are enjoined from taking any of the following actions against or affecting Debtor or her assets with respect to such Claims (other than actions brought to enforce any right or obligations under the Plan or appeals, if any, from the Confirmation Order): (i) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind against Debtor; (ii) enforcing, levying, attaching, collecting or otherwise recovering by any manner or means whether directly or indirectly any judgment, award, decree or order against Debtor or her assets; (iii) creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against Debtor or her assets; (iv) asserting any set-off, right of subrogation or recoupment of any kind directly or indirectly against any obligation due Debtor or her assets; and (v) proceeding in any manner in any place whatsoever that does not conform to or comply with the provisions of the Plan.

**10.03 Limitation of Liability**

Debtor and her Professionals shall have or incur no liability to the extent allowed under Bankruptcy Code section 1125(e) and, in all respects, Debtor and her Professionals shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan. Nothing in the Plan shall limit the liability of the Professionals of Debtor for malpractice to their respective clients pursuant to N.Y. Comp. Codes R. & Regs. Title 22, Section 1200.0, Rule 1.8(h)(1) nor release any party for any claims of fraud, *ultra vires* acts, gross mismanagement, or willful misconduct, Additionally, the Plan shall not release or exculpate any person or entity from any Claim or Cause of Action existing as of the Effective Date (i) based on the Internal Revenue Code or other domestic state, city or municipal tax code; (ii) based on the environmental laws of the United States or any domestic state, city or municipality; (iii) based on any criminal laws of the United States or any domestic state, city or municipality; (iv) based on the Securities Exchange Act of 1934, as now in effect or hereafter amended, the Securities Act of 1933, as now in effect or hereafter amended, or other securities laws of the United States or any domestic state, city, or municipality.

## Article 11: Confirmation Request

**11.01** Debtor hereby requests Confirmation of the Plan pursuant to Bankruptcy Code sections 1129 and 1191.

Dated:  November ___, 2024

    Respectfully submitted,

    **Hyacinth Joyce Simms**

By: _____
    Hyacinth Joyce Simms